Opinion by
 

 Reno, J.,
 

 This is the second appearance in this Court of the case which was reported sub. nom.
 
 Lavely Unemployment Compensation Case,
 
 163 Pa. Superior Ct. 66, 60 A. 2d 352. In that decision we reversed the board’s denial of benefits and remanded the record for adequate and consistent findings of fact. After taking additional testimony the board formulated new findings of fact and rendered a decision awarding benefits to the claimant Lavely. The employer, The Climax Brick Company, hereafter called Climax, appealed, and although the
 
 *483
 
 award is in Ms favor, claimant has also appealed, alleging that he is aggrieved by certain findings of fact. Each party has been permitted to intervene as an additional appellee in the opponent’s appeal.
 

 The board’s revised findings, fairly summarized, establish the following facts. Claimant is a brick molder employed by Climax, and with other employes (whose claims will also be settled by this decision) is a member of United Construction Workers, Local No. 381, an affiliate of the United Mine Workers of America, and hereafter called the Union. Climax manufactures brick and other clay products and at the time here involved employed approximately 142 persons.
 

 Climax and the Union had a wage agreement which expired March 30, 1947, but which, by mutual agreement, was extended to April 30,1947, so that the parties might further negotiate for a new contract. The original contract and the extension were executed for the Union by Peter Ferrara, a regional director of Union Construction Workers.
 

 Pursuant to the Smith-Connally Act a thirty-day strike notice, effective midnight, May 4,1947, was sent to Climax by Ferrara for the Union. During the thirty-day period negotiations continued in which the Union was represented by Ferrara and a committee of which claimant was a member. No agreement was reached, and at the last meeting held on April 26,1947, Ferrara stated that the Union men would cease work on May 4. The board found specifically that Ferrara was authorized to act on behalf of the Union and that the committee, including claimant, was present and made no objection to the statement.
 

 During the afternoon of April 30 Climax’s foreman notified claimant that upon completion of his particular job his work would be finished. On May 1 and 2 various other employes were similarly notified. On May 1 the foreman at the clay mine posted a notice stating that
 
 *484
 
 there would be no work until further notice. Operations generally, excepting completion of the burning in certain kilns, ceased on Friday, May 2, which was the end of the work-week, since normally Climax did not operate on Saturdays or Sundays. The action of the employer “was based on the belief that a strike would occur on May 4, 1947, pursuant to the strike notice”, and was taken “in connection with a gradual curtailment of productive activities in anticipation of the strike.” Climax was not animated by a “desire to discourage the claims of its employes or to strengthen its position in the labor dispute, but rather to avoid any accumulation of exposed clay.” (Findings of Fact, Nos. 7 and 8.)
 

 There is no finding that a strike followed,
 
 [1]
 
 but the board did find that employes did not return to work until June 12, 1947, and that operations generally were resumed on June 16, 1947, at which time claimant returned to work. The employes returned only after “an agreement [had been] reached between the company and the union on June 10, 1947,” and thus, whether or not the employes struck, they were undoubtedly unemployed as a result of an industrial dispute.
 

 Moreover, their unemployment was “due to a voluntary suspension of work”, within the meaning of the Unemployment Compensation Law, as amended by the Act of May 29, 1945, P. L. 1145, §9(d), which was the
 
 *485
 
 applicable section in force at that time. Ferrara was the agent of the Union and claimant’s agent, and they were bound by his acts. As late as April 26, 1947, Ferrara, at a meeting at which claimant was present, informed Climax that “the men will cease work on May fourth.” Climax had the right, even if it was not its obligation, to rely upon the positive statement of the Union’s representative and claimant’s agent. Climax was not bound to act as though no strike would take place in the face of Ferrara’s positive assertion to the contrary. It was authorized to accept his assertion as an authentic expression of the definite policy of the Union, and to act accordingly. Belying upon his statement, Climax was permitted to make such preparation for meeting the exigency presented by the threatened strike as its managers in the exercise of good faith deemed necessary. It was not required to await the actual and visible refusal of the employees to return to work.
 

 Of course, an employer may not use a strike notice as a mere pretext for closing his plant and discharging his employes. He cannot secure a bargaining advantage by such means. Borrowing counsel’s penetrating phrase, “he cannot jump the gun on his employes.” But when a strike is imminent, when an employer has been officially notified that a strike will occur, and has reasonable grounds for a belief that the strike will actually take place, he may, prior to and in anticipation thereof, take reasonably necessary measures to protect his property during the pendency of the strike. The nature and extent of such measures depend upon the kind of work and the circumstances in which it is conducted, and ordinarily the board will not overrule the honest judgment of an employer.
 

 The findings of the board indicate that Climax acted in good faith. Anticipating a strike, it suspended work, “tapering off production”, for the purpose of conserving
 
 *486
 
 its property and not to gain an advantage. Tlie findings are supported by convincing evidence and we are bound by them. The strike notice sparked a chain of events; the notice was the unrepudiated act of claimant’s agent; and he became unemployed as a result of his own voluntary act.
 
 Prentice Unemployment Compensation Case,
 
 161 Pa. Superior Ct. 630, 56 A. 2d 295. Cf.
 
 McKinley v. California Employment Stabilization Commission,
 
 209 P. 2d 602. A principal is always responsible for the natural and probable consequences of the authorized acts of his agent.
 

 The decision of the board is reversed, the decision of the referee is reinstated, and credits for claims filed during the period in question are denied. The respective parties shall pay their own costs.
 

 [1]
 

 When the ease was here previously the board had found as facts: “9. On Monday morning, May 5, 1947, the production workers did not report for work and, excepting necessary maintenance workers, the plant remained closed down until June 16, 1947, when, as a result of negotiations at a meeting held June 10, 1947, an agreement was reached, ratified, and the work stoppage ended on June 16, 1947. 10. On May 5, 1947, the entrance gates were open, work was available for the men and if any had reported for work they would have been employed. After that date, the employer locked up the plant for protection but any employee really wanting to return to work could have gained admittance. None applied during the period the plant was closed.”