## Polinchak Unemployment Compensation Case.

Argued November 17, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*Charles F. McKenna,* with him *Ernest G. Nassar,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, for appellee.

*John G. Wayman,* with him *Franklin L. Morgal, Francis St. Clair O'Leary* and *Reed, Smith, Shaw & McClay,* for intervenor, appellee.

OPINION BY HIRT, J., March 16, 1954:

This is a group appeal by a number of employes of the Pittsburgh Steel Company at its Monessen plant from the decision of the Unemployment Compensation Board of Review denying compensation.

All of the claimants are members of the United Steelworkers of America, C.I.O. On April 29, 1952 they left their work when an industry-wide strike was called by the president of the union. As a result, all operations at the Monessen plant ceased on that date. The strike ended on May 2, 1952 and the actual work stoppage, the following day. The Monessen plant is

an integrated steel mill and in the sequence of opera-
tions from the blast furnace to the finished product
each department is dependent upon others. Because
of a failure of the steam plant and the interdependence
of the various departments, it was not possible to re-
sume full operations immediately upon termination
of the work stoppage. The plant did proceed accord-
ing to an orderly plan for the gradual resumption of
operations in all departments and each claimant was
recalled when work was available in his particular
unit. These claimants presented themselves for work
on May 3 but work was not available until May 11 for
some of them, and May 12 for the others, when they
were recalled to their jobs. Compensation was claimed
for weeks ending on one or the other of those dates.

In anticipation of the impending labor dispute the
Union had agreed that, in the event of a strike, standby
maintenance employes would be afforded access to the
plant to prevent damage to it and to expedite resump-
tion of production at the end of the work stoppage. The
local union had pledged cooperation in effecting an
orderly shutdown of the plant and had agreed specifi-
cally to keep vital steam plants in operation. The
agreement was repudiated on April 30, 1952 and of
necessity the steam plant was completely closed down
on that day. From a too-rapid cooling of the steam
plant, when the maintenance men were withdrawn by
the Union, ruptures in the steam pipes and separations
in the joints of conducting units resulted. Steam was
essential to resumption of operations and the time nec-
essarily consumed in repairing the damage to the steam
plant was the principal factor contributing to the de-
lay in resuming production. Repair of the damage was
not completed until May 6. Steam was available to the
blast furnace on that date and the first hot metal was
delivered to the open hearth furnaces on May 8. It

was not until May 12 however that steel could be processed and delivered to the "finishing side of the mill" where claimants were employed.

Concededly claimants were not eligible for compensation for the period of the stoppage of work ending May 3, 1952, because of the labor dispute culminating in the strike. Section 402(d) of the Unemployment Compensation Law as last amended by the Act of May 23, 1949, P. L. 1738, 43 PS §802. But the period of a disqualifying work stoppage does not necessarily end on the date of the termination of a strike. Cf. *Lavely Unemployment Comp. Case*, 166 Pa. Superior Ct. 481, 485, 72 A. 2d 300. The time reasonably required to restore the plant to normal operation is a part of the disqualifying period under §402(d). We have so decided in *Bako Unemployment Compensation Case*, 171 Pa. Superior Ct. 222, 90 A. 2d 309. In that case Judge RENO speaking for this court said: "The rationale of the second *Lavely* case is applicable also during the time reasonably required to put the plant in normal operation after the strike ends. What is a reasonable period will always 'depend upon the kind of work and the circumstances in which it is conducted.' In a department store, for instance, resumption of employment might follow the strike's termination in the course of a few hours. Perhaps a textile mill would require a longer time. In an industry, such as Bethlehem Steel, operating several departments which are dependent for power upon a central plant, with equipment to be repaired, machinery cleaned, and other preparatory steps to be taken, a longer time must necessarily be allowed. Possibly, the duration of the strike becomes a relevant factor. At all events, the Board will consider all the circumstances and override the management only when it finds that it failed to exercise honest judgment. It follows that, however willing employes

may be to return to work immediately after the termination of the strike, the continuing stoppage of work must be held to be due to the original labor dispute."

The findings of the Board reflecting the essential facts to which we have referred are amply supported by the testimony. And we are in complete accord with this discussion by the Board based on its findings: "Under this decision [Bako Unemployment Compensation Case, supra] the Board may 'override the management only when it finds that it (management) failed to exercise honest judgment.' Under the facts found, we are agreed that the employer's action was in complete consonance with the situation with which it was confronted and was, in all respects, predicated upon 'honest judgment.' Obviously, the employer was not obligated to alter a normal and reasonable resumption schedule to accommodate a particular worker or group of workers . . ." Under the peculiar problem confronting management in the present case it is unimportant that after a strike lasting only four days a longer time was required to resume production than in the *Bako* case where the strike closed the Bethlehem Steel plant for a month. In the *Bako* case the opportunity was afforded the Bethlehem Company by the Union for "tapering off" the operations of its highly integrated steel plants in an orderly manner to prevent substantial damage to equipment. Here, that cooperation was denied.

Decision affirmed.