## Mosko Unemployment Compensation Case.

Argued April 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Ines W. Cordisco,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Raymond Kleiman,* Deputy Attorney General, and *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WATKINS, J., September 13, 1962:

In these unemployment compensation cases the Board of Employment Security, the Referee and the

74

Unemployment Compensation Board of Review all concluded that the claimants were disqualified for benefits in that their unemployment was due to an industrial dispute under the provisions of §402(d) of the Unemployment Compensation Law, 43 PS §802(d).

Michael J. Mosko and Klement E. Segina, the claimants, were last employed at the Duquesne Works of the United States Steel Corporation, in the electric furnace department, on July 4, 1959. They were members of United Steelworkers of America, Local 1256. From July 15, 1959 to November 7, 1959 the Duquesne Works was shut down due to the industry-wide steel strike called by the United Steelworkers of America.

There is no question that the work stoppage from July 15, 1959 to November 7, 1959, was the result of an industrial dispute. The law is clear that under the provisions of §402(d), no person unemployed because of a work stoppage which exists because of a labor dispute can secure unemployment compensation unless he can prove that he is not directly interested in the labor dispute; is not a member of the participating union; and is not of the same grade or class of workers as the strikers. *Oluschak Unemployment Compensation Case,* 192 Pa. Superior Ct. 255, 159 A. 2d 750 (1960). These claimants would be unable to so prove as they were admittedly members of the union participating in the strike, long-time employees of this company and directly interested in its successful outcome. The appeals in these cases are from the denial by the compensation authorities of benefits for the weeks beginning with the week ending July 18, up to and including the week ending November 7th. This was the strike period. Nothing else is before us. The record disclosed an agreement that the two claims before us will be dispositive "to all employees in the electric furnace department." The question involved can be decided without taking into consideration the difference

in the factual situation, in that one of them was called back for a few days during the layoff prior to the strike.

The contention of the claimants in these cases is that their work stoppage was due to a layoff for lack of orders prior to the strike and did not exist as a result of the labor dispute and so they are entitled to benefits.

The record indicates that the employer began to take steps to curtail operations, production and employment of and in the plant in anticipation of the imminent strike and that this curtailment was also necessary because of reduction of orders by customers in anticipation of the imminent strike. A notice was placed on the Bulletin Board on July 2, reading as follows: "Due to the lack of orders the Elect. Fce. Dept. will shut down for one (1) week starting Saturday July 4th, at 11 :P.M. Anyone who desires a vacation is requested to come to the Electric Furnace Office. This is signed H. Green, Superintendent of the Electric Furnace Department." Another notice was posted on July 13, which read as follows: "Due to conditions beyond control of management created by necessity to protect facilities the Elect. Fce. Dept. will shut down tonight at 11 :P.M."

According to the testimony, although negotiations were continuing, a strike was anticipated to take place during the week of July 13th. The Board found that "his last day of work for the purpose of this case was July 4, 1959, when he was laid off in *anticipation of the strike.*" (Emphasis added). The Board also found he was laid off because of lack of work in the electric furnace department but the testimony disclosed that the lack of work was due to "our orders were not coming in from our customers because of the anticipation of the strike."

As testified to by John Zelesnik, Supt. Employee Placement, Duquesne Works: "Q. Now during that time or just prior to the strike in the week of July 2, was the department—were orders geared to the department in anticipation of the strike? A. Well orders were not coming in from our customers because of the anticipation of the strike."

The period involved, at most, was from July 4, to July 15, and even if we disregard the fact that three shifts were recalled during this period for a number of days, in the face of the record's disclosure of circumstances existing immediately before shutdown, this period is not unreasonable in order to curtail production, reduce employment, and protect the plant in anticipation of the walk-out. Where unemployment is the result of action taken by the employer, in good faith, in anticipation of a strike, such work stoppage is the result of the industrial dispute and not compensable. *Lavely Unemployment Compensation Case,* 166 Pa. Superior Ct. 481, 72 A. 2d 300 (1950); *Bako Unemployment Compensation Case,* 171 Pa. Superior Ct. 222, 90 A. 2d 309 (1952).

In *Bako Unemployment Compensation Case,* supra, it was contended by the claimants that their layoff, prior to the strike, was because of lack of orders. What Judge RENO said in that case, at page 228, is applicable to the case at bar: "This point was decided in Lavely Unemployment Compensation Case, 166 Pa. Superior Ct. 481, 485, 72 A. 2d 300, where this Court said: 'When a strike is imminent, when an employer has been officially notified that a strike will occur, and has reasonable grounds for a belief that the strike will actually take place, he may, prior to and in anticipation thereof, take reasonably necessary measures to protect his property during the pendency of the strike. The nature and extent of such measures depend upon the kind of work and the circumstances in which it

is conducted, and ordinarily the board will not overrule the honest judgment of an employer.'

"The rationale of the second Lavely case is applicable also during the time reasonably required to put the plant in normal operation after the strike ends. What is a reasonable period will always 'depend upon the kind of work and the circumstances in which it is conducted'. In a department store, for instance, resumption of employment might follow the strike's termination in the course of a few hours. Perhaps a textile mill would require a longer time. In an industry, such as Bethlehem Steel, operating several departments which are dependent for power upon a central plant, with equipment to be repaired, machinery cleaned, and other preparatory steps to be taken, a longer time must necessarily be allowed. Possibly, the duration of the strike becomes a relevant factor. At all events, the Board will consider all the circumstances and override the management only when it finds that it failed to exercise honest judgment. It follows that, however willing employes may be to return to work immediately after the termination of the strike, the continuing stoppage of work must be held to be due to the original labor dispute."

Judge RENO'S comments as set forth above concerning resumption of employment after a strike are equally applicable to the preparation of a plant for a shutdown. The Duquesne Works of the United States Steel Company, of which the electric furnace department is a part, is an integrated steel plant, the function of which is to make iron, faro-manganese, steel ingots, blooms, billets, slabs of carbon alloy and stainless steel grades. It employs, roughly, 5600 men. It is a stupendous task, in effect, to place such a plant in mothballs to meet a shutdown deadline, so that when the indefinite suspension ends it will be ready to resume operation with the least possible delay. To ac-

complish this it is clearly necessary to curtail production and take action to protect the plant and its equipment and machinery. Such actions, made necessary by the impending walk-out by the employees union, must, by their very nature, result in a reduction of employment as a result of the industrial dispute.

There is discussion in both briefs and there is testimony in the record concerning the period subsequent to the strike. Although the claim periods subsequent to the strike are not before us in these appeals, suffice it to say as decided by this Court in the *Bako Unemployment Compensation Case,* supra, that the employer is entitled to a reasonable period after the strike to put the plant back into normal operation, the disqualification under §402(d) is not limited strictly to the strike period but includes a period prior to the strike, hereinabove discussed, and a period after the strike, reasonably required to put the plant back into normal operation. Here again, the period involved in view of the kind and size of the plant and the number of employees seems reasonable. The strike ended on November 7. Some employees were called back immediately; some on November 16; and the last group on November 23. The record shows they were called back as needed and as the plant was put back into normal operation.

We cannot agree that the findings of fact by the board that (1) they were laid off in anticipation of the strike and (4) that they were laid off for "lack of work" are inconsistent findings, because findings No. 1 and No. 4, read together with the rest of the findings and the order indicate quite logically and clearly that they were laid off because of lack of work in anticipation of the strike.

A thorough examination of the testimony in this case disclosed that these findings are amply supported by competent evidence and are binding on this Court.

The Board's findings of fact are consistent with each other and with the conclusion of law and can be sustained without a capricious disregard of the competent evidence. The ultimate conclusion based on evidentially supported findings is that the work stoppage of these claimants, prior to the official shutdown due to the strike, was due to a labor dispute. And although lack of orders or lack of work were involved in the preliminary reduction of force, these causes, too, were the direct result of the impending strike.

Decisions affirmed.