## Clark Unemployment Compensation Case. Philco Corporation, Appellant, *v.* Unemployment Compensation Board of Review.

240

Argued June 15, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Ronald Souser,* with him *Morgan, Lewis & Bockius,* for appellant.

*Sydney Reuben,* Assistant Attorney General, for Unemployment Compensation Board of Review, appellee.

*Harry R. Kozart,* for claimant, intervenor.

OPINION BY SPAULDING, J., November 17, 1966:

This is an appeal by Philco Corporation from a decision of the Unemployment Compensation Board of Review granting compensation to claimant Walter H. Clark. Clark was an employe of Philco and a member of Local 101 of the International Union of Electrical, Radio and Machine Workers.[1]

---

[1] By stipulation, the determination of this appeal will govern the claims of all employes represented by Locals 101 and 102 of said union.

The union and Philco executed collective bargaining agreements effective April 30, 1962 and expiring April 26, 1964. In November 1963, informal efforts were begun to reach a new agreement. Fifteen to twenty meetings between Philco and the union were held, but they led to no accord. A work stoppage resulted on Monday, April 27, 1964 and continued until June 15, 1964.

The sole question before us is whether the above work stoppage was the result of a lockout[2] or a strike.

. The controlling legislation is §402(d) of the Unemployment Compensation Law, 43 P.S. §802(d), which provides in pertinent part: "An employe shall be ineligible for compensation for any week—(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed . . . ."

Claimant's application for benefits under this section was refused by the Bureau of Employment Security. After extensive hearings, the Referee affirmed this decision denying benefits. On August 12, 1965 the Unemployment Compensation Board of Review reversed the Referee and allowed benefits, holding that the work stoppage was due to a lockout within the meaning of §402(d). Philco appeals.

Responsibility for a work stoppage rests with the party whose actions constituted the final cause thereof and it is the duty of the compensation authorities to ascertain the final cause. *Bokoski Unemployment Compensation Case,* 206 Pa. Superior Ct. 96, 211 A. 2d 124 (1965) ; *Klima Unemployment Compensation Case,*

---

[2] "A lockout is an employer's withholding of work from his employees in order to gain a concession from them. . . . The core of a lockout is the act of an employer in withholding work." *Irvin Unemployment Compensation Case,* 198 Pa. Superior Ct. 308, 314, 181 A. 2d 854, 858 (1962).

205 Pa. Superior Ct. 489, 211 A. 2d 23 (1965). The Board found, inter alia, that: "Spokesmen for Philco Corporation on many occasions insisted to the Union . . . that its proposals had to be adopted or the plant would have to close." The Board concluded the union had ". . . no choice but to remain away and not to report for work." The facts do not support this finding. On the contrary, the following shows that the union voluntarily chose to stop working.

1. During one of the union broadcasts after the commencement of the stoppage, Stanley Slovitsky, President of Local 102, stated: "Finally the contract under which our members provided their services expired. When we no longer had contractual protection for our services, *we withheld these services.* Curiously, that is exactly the way the Ford Motor Company operates in purchasing materials. No contract, no purchase." (Emphasis added.)

2. In another broadcast a union member stated: "The four thousand men and women who *voluntarily* stopped work have also lost about one million dollars of income. It was not an easy thing to do to decide to stop working and therefore stop your income. *We chose to withhold our skills and abilities. We chose to stop working.*" (Emphasis added.)

3. On April 25, 1964, the membership of both locals voted not to report to work on April 27, the next regularly scheduled working day. Union pickets appeared outside the plant carrying placards which proclaimed that a "strike" was in progress.

The law is settled that if a strike by the union caused the work stoppage, the employes are not entitled to benefits under §402(d). If the stoppage was the responsibility of the employer and was a lockout, benefits are granted. Even if the stoppage takes the form of a strike, the employes are not to be denied compensation if they offered to continue working for

a reasonable time under the pre-existing terms and conditions of employment, pending further negotiations. *Klima Unemployment Compensation Case,* supra; *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A. 2d 91 (1960).

In *Vrotney,* the Supreme Court presented the following test: "In the very delicate and sensitive negotiations which are involved in the development of a new collective bargaining agreement to replace one that is nearing its expiration, all parties must be sincere in their desire to maintain the continued operation of the employer's enterprise. The law contemplates that collective bargaining will be conducted in good faith, with a sincere purpose to find a basis for agreement. . . . when the contract has in fact expired and a new agreement has not yet been negotiated, the sole test under §402(d) . . . of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply."

The import of this language is clear. It is the duty of the employe to offer to continue working for a reasonable time under the same terms and conditions. It is also clear that if the employes make a bona fide offer to continue working and the employer rejects it, the

result is a lockout. Several recent cases have so held. *Bokoski Unemployment Compensation Case,* supra; *Klima Unemployment Compensation Case,* supra; *Irvin Unemployment Compensation Case,* supra; *Lerch Unemployment Compensation Case,* 400 Pa. 446, 163 A. 2d 535 (1960).

The duty of the employe to make a reasonable offer to continue was strongly emphasized in the *Lerch* case where employes offered to continue working on a day to day basis. The Court held that this offer was unreasonable under the circumstances and that the union then had ". . . a duty to make a further proposal thereby indicating its sincere willingness to continue working for a reasonable time . . . ." The Court concluded: "The crux of the case . . . lies in the fact that this willingness by the Union to extend the status quo was publicly communicated to the Employer only with regard to a day to day basis. Such an offer does not meet the test established under Section 402(d)." *Lerch Unemployment Compensation Case,* supra, at 451.

In the instant case, not only was there a failure to offer to continue working, but the chief negotiator of the union, Harry Block, repeated during negotiations, the policy of "no contract, no work." In addition, both local presidents admitted that the membership voted to strike.

Claimant contends that it would have been futile to offer to continue under existing conditions because Philco would not accept anything but their own terms. It relies on the *Irvin* case where the company president said several days before the expiration date of the agreement: "Anyone coming in to work (after the agreement expires) will be on my terms." *Irvin Unemployment Compensation Case,* supra, at 311. We there held that it would have been futile for the union to offer to continue working under these circumstances.

Claimant contends that a speech by Philco president Charles Beck on March 10, 1964 was a similar ultimatum to the employes to comply with the new terms proposed by the company. During the speech, Beck traced the downward trend in sales since 1959 and the increased pressure from foreign imports. He noted sharply increasing repair costs and enumerated changes in sales training and promotion which he felt were necessary to effectively manage the plant. However, this speech referred only to what was needed for the plant's "ultimate survival" and there was no evidence of an immediate termination date if the proposals were not accepted, or that work would not have been available on April 27.

Claimant further contends that a Philco negotiator, Fred Meredith, said at a March meeting that "unless the company got these changes it would not operate the plant." Meredith denied ever making the statement and produced evidence to show that he was in Iowa on March 26. The president's statement was made prior to formal negotiations and Meredith's alleged statement occurred at one of the earliest meetings. Neither was repeated during the negotiations. The union never asked for verification of either statement throughout this period.

The circumstances of our case differ noticeably from the clear cut pronouncement by the company president in *Irvin*. The Board's conclusion that the statements made by the Philco spokesmen constituted a threat to close the plant immediately upon the expiration date and thereby render an offer to continue work futile, is not supported by the evidence.

Finally, the claimant alleges that strike preparations taken by Philco indicate an intention to close the plant at the termination of the existing collective bargaining agreement. Although the Board made no finding concerning the work stoppage preparations, they

do not support the union's contention. Philco had been apprised of the union's "no contract, no work" position. It is entirely reasonable for an employer to make preparations for a work stoppage if he, in good faith, anticipates a strike. *Lavely Unemployment Compensation Case,* 166 Pa. Superior Ct. 481, 72 A. 2d 300 (1950).

We find that the voluntary withdrawal of services by the union; the failure of the union to offer to continue working at the same terms and conditions pending a new agreement; and the absence of evidence that Philco would not have permitted work to continue except at their terms, disqualify the claimant from receiving benefits under §402(d).

The decision of the Board is reversed.

CONCURRING OPINION BY WRIGHT, J. :

This case arises under Section 402(d) of the Unemployment Compensation Law. Act of December 5, 1936, P. L. (1937) 2897, 43 P.S. 802(d). Philco Corporation, the employer, has appealed from a decision of the Unemployment Compensation Board of Review allowing benefits to Walter H. Clark, one of its employes, on the ground that a work stoppage on April 27, 1964, constituted a lockout. The Bureau of Employment Security denied benefits. The Referee affirmed the determination of the Bureau. The Board ultimately reversed the Referee's decision.

Claimant and other employes similarly situated were members of locals of the International Union of Electrical, Radio & Machine Workers. Collective bargaining agreements previously entered into between the Union and Philco Corporation were due to expire at 12:01 A.M., April 26, 1964. Frequent meetings were held prior to that date between representatives of the Union and the employer in an attempt to reach satisfactory terms for new collective bargaining agree-

ments. It was the position of Philco Corporation that, in order for it to economically survive, more stringent production standards should be included in the new agreements. On April 25, 1964, the Union members voted not to report to work on April 27, 1964, the next regularly scheduled working day. Work was not resumed until terms of new collective bargaining agreements had been agreed upon on June 15, 1964.

The law is well settled that responsibility for a work stoppage is assessed against the party whose action constitutes the final cause thereof, and that it is the duty of the unemployment compensation authorities to ascertain this final cause and responsibility: *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A. 2d 91. The sole test was stated in the *Vrotney* case to be as follows: "Have the employes offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations?" In the case at bar, it is undisputed that the Union made no offer to continue work under the terms of the old collective bargaining agreements. "We chose to stop working".

Claimants place reliance upon *Irvin Unemployment Compensation Case,* 198 Pa. Superior Ct. 308, 181 A. 2d 854, but that case is not here controlling. In the *Irvin* case, the president of the employer, Small Tube Products, Inc., flatly stated that there would be no further extension of the old collective bargaining agreement, and that work would continue only on the employer's terms. We held that, under such circumstances, the Union was not required to offer or request a further extension.

In the case at bar the Referee made the following significant finding of fact: "16. Continued work was available for claimant and his co-workers after April 26, 1964 under the same terms and conditions existing immediately prior thereto". The Board did not make, nor could it properly have made, any finding to the contrary. The record clearly reveals that the work stoppage here under consideration was a strike and not a lockout. Indeed, it was characterized as a strike in the union newspaper.

---

DISSENTING OPINION BY HOFFMAN, J.:

This Court should not re-try factual matters best left to the determination of the Review Board. *Progress Manufacturing Company, Inc. v. Unemployment Compensation Board of Review*, 406 Pa. 163, 176 A. 2d 632 (1962), reversing 195 Pa. Superior Ct. 110 (1961).

In this case, the Board found that Philco spokesmen ". . . insisted to the Union and its negotiators that its proposals had to be adopted . . . or the plant would have to close." The Board further found that Philco adhered to this position through April 26, 1964.

There is ample support for these findings in the testimony of Mr. Slovitsky, President of Local 102, and of Mr. Block, Vice President of the International Union. Mr. Slovitsky testified as follows:

"Q. Did the company indicate to you what would happen if these proposals were not accepted by the union?

"A. They would not operate if they did not have what they proposed."

Mr. Block described the position taken by Philco's negotiating team:

"Q. Was there anything said by Mr. Meredith or anybody else what would happen if you did not accept the proposals?

"A. The plant would not operate.

"Q. Beginning when?

"A. Right at the termination of the existing contract."

Moreover, the Board found that an earlier speech by Philco's President, Charles Beck, constituted a similar ultimatum. In that speech, Mr. Beck stated that Philco was determined to achieve a radical revision of the existing collective bargaining agreement. Unless these changes were agreed to, everything else would be a "waste of time, money, and effort. . . ." He reminded the employees that the plant's "ultimate survival" was at stake.

The majority opinion correctly notes that Mr. Meredith denied making the statement attributed to him, and that Mr. Beck's threat was veiled in studied ambiguity. Nevertheless, we have repeatedly affirmed our statement in *Stillman Unemployment Compensation Case*, 161 Pa. Superior Ct. 569, 575, 56 A. 2d 380, 383 (1948), that: "The credibility of the witnesses, the weight of their testimony and the reasonable inferences to be drawn from it are for the board. Our duty is performed by studying the testimony in the light most favorable to the party in whose favor the board has found, giving that party the benefit of every inference which can logically and reasonably be drawn from it." *Bokoski Unemployment Compensation Case*, 206 Pa. Superior Ct. 96, 211 A. 2d 124 (1965).

The record before us adequately supports the Board's conclusion that it would have been futile for claimants to ". . . report to work [on April 27, 1964] when they knew that work would not be available to them under the same terms and conditions that existed prior thereto." The law does not require the doing of a futile act. Since, as the Board found, Philco's employees had ". . . no choice but to remain away and not to report for work," they cannot be charged with ultimate responsibility for this work stoppage. *Irvin Un-*

*employment Compensation Case,* 198 Pa. Superior Ct. 308, 181 A. 2d 854 (1962).

I would affirm the decision of the Board awarding compensation to these claimants.

WATKINS and JACOBS, JJ., join in this dissenting opinion.