# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Fish and : 
Boat Commission, : 
           Petitioner : 
            : 
          v. : No. 1962 C.D. 2016
            : SUBMITTED: May 12, 2017
Unemployment Compensation : 
Board of Review, : 
           Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE HEARTHWAY           FILED: August 31, 2017

          Pennsylvania Fish and Boat Commission (Employer) petitions for review of the November 7, 2016 order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's decision finding that Ronald J. Evancho (Claimant) was not ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[1]  Section 402(e) of the Law provides that a claimant shall be ineligible for benefits for any week in which his unemployment is due to willful misconduct connected with his work.  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant was employed with Employer from August 25, 1995 through May 25, 2016 as a full-time Waterways Conservation Officer. (Findings of Fact (F.F.) No. 1.) Employer discharged Claimant for (i) the alleged falsification of records and reports because his declared whereabouts and work activity on his time records did not match other associated data; and (ii) the alleged failure to exercise the proper care and use of Commonwealth property because Claimant threw away his body armor (bullet proof vest). (R.R. at 120a-21a.) Claimant applied for unemployment compensation (UC) benefits and the UC Service Center denied benefits pursuant to section 402(e) of the Law. Claimant appealed to a referee, and a hearing was held. At the hearing, Employer presented witnesses and documentary evidence and Claimant testified and presented documentary evidence. Based on the evidence, the referee made the following findings of fact.

Employer has a policy in which the falsification of records and reports and the failure to exercise proper care and use of Commonwealth property is grounds for disciplinary action up to and including discharge. (F.F. No. 3.) Claimant was aware of this policy. (F.F. No. 3.) Claimant was required to accurately document his work activities and travel. (F.F. No. 5.) There are specific codes which employees must use to document their activities, but there is no time code for travel. (F.F. No. 9.) Because there was no code to report travel time, Claimant listed his travel time as other categories, such as patrol and administrative. (F.F. No. 12.) Claimant sometimes rode with other officers, rather than use his own vehicle, which accounts for some of the discrepancies in Claimant's time and activity reports. (F.F. No. 13.) Additionally, it is common

2

practice to round activity times to 15 or 30 minute increments. (F.F. No. 10.) Claimant was assigned a computer tablet to work from the field. (F.F. No. 11.) Claimant periodically reported having difficulties with the tablet and its inability to synchronize with the Law Enforcement Officer Reporting System, which is used for time and activity reports. (F.F. No. 11.) Claimant sometimes made mistakes on his time and activity reports. (F.F. No. 14.)

On December 19, 2014, Claimant received a three-day suspension for falsification of documents. (F.F. No. 4.) Sometime at the end of 2015, Employer conducted an investigation into Claimant's recorded work activities and travel. (F.F. No. 6.) In March of 2016, Employer held a pre-disciplinary conference (PDC) to discuss Claimant's alleged falsification of his activities for approximately 41 different incidents. (F.F. No. 7.) Employer did not provide Claimant with the specific dates in question prior to the PDC, and at that time, Claimant was unable to satisfactorily answer Employer's questions in regard to his whereabouts on the dates in question. (F.F. No. 8.)

In January of 2016, Employer advised Claimant and his fellow officers that Employer would be providing new body armor to its officers. (F.F. No. 16.) Employer has a Body Armor Policy of which Claimant was aware. (F.F. No. 17.) Under the Body Armor Policy, body armor which is worn or damaged shall be replaced by the agency. (F.F. No. 17.) Additionally under the Body Armor Policy, officers must inspect personal body armor for signs of damage and general cleanliness. (F.F. No. 18.) Officers are responsible for reporting damage or excessive wear to their supervisor. (F.F. No. 18.) Body armor will be replaced

3

in accordance with guidelines and safety protocols established by the National Institute of Justice. (F.F. No. 18.) Claimant's body armor was curled up from every day wear and stank of body odor, despite Claimant's efforts to clean it. (F.F. No. 21.) After Claimant received his new body armor in January of 2016, he discarded his old body armor because he felt that it was no longer serviceable. (F.F. No. 22.) On March 8, 2016, Employer requested that employees bring their old body armor to a meeting for officers who needed newer and/or better fitting armor. (F.F. No. 23.) Claimant was unable to comply with Employer's request because he discarded his old body armor. (F.F. No. 24.) In April of 2016, Employer held a PDC to discuss Claimant's alleged violation of the policy concerning care and use of Commonwealth equipment. (F.F. No. 25.)

After the hearing, the referee reversed the UC Service Center's determination, concluding that Employer failed to meet its burden to establish that Claimant committed willful misconduct. With respect to the allegation that Claimant falsified records and reports, the referee noted that Employer was not questioning that Claimant was working, but was questioning his whereabouts and activities during his work day because they did not appear to be reported accurately. The referee found that Claimant provided competent and credible evidence to refute each of Employer's allegations. The referee further found Claimant credible regarding his inability to answer Employer's questions at the PDC because Employer would not provide specific dates prior to the meeting so Claimant could adequately address them. The referee found there was no competent evidence to show that Claimant was deliberately falsifying documents. The referee found Claimant credible that he made mistakes in entering his

4

activities and deemed them honest mistakes. The referee concluded that Claimant's honest mistakes were not willful misconduct, and therefore Employer failed to sustain its burden with respect to the allegation that Claimant falsified documents. (Referee's decision at 3.)

With respect to Claimant's alleged violation of Employer's policy concerning Commonwealth property, the referee noted that Claimant's body armor was over five years old and was worn and malodorous, despite Claimant's efforts to clean it. The referee also found that Claimant credibly testified that he threw the body armor away because he felt it was no longer useful. The referee determined that Employer's policy does not state that employees are required to turn in body armor to Employer upon receipt of new body armor. The referee found that Claimant's actions regarding his body armor were not so egregious as to constitute willful misconduct. (*See* Referee's decision at 4.)

The referee did not question Employer's right to discharge an employee for any reason. However, the referee determined that a denial of benefits cannot be based on the grounds alleged by Employer. (Referee's decision at 4.)

Employer appealed to the Board, which affirmed. The Board found that Claimant credibly explained the alleged discrepancies in his time records. Additionally the Board found that Employer's policies do not require employees to turn in unusable vests, and that Claimant had already disposed of his old vest when he was directed to turn it in. The Board stated that although Employer had the right to discharge Claimant, the Board cannot find that the discharge was the result

5

of willful misconduct. The Board adopted and incorporated the referee's findings and conclusions and affirmed the referee's decision.

Employer now petitions this Court for review of the Board's order, arguing that the Board erred in determining that Claimant did not engage in willful misconduct.[2]

Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Reading Area Water Authority v. Unemployment Compensation Board of Review*, 137 A.3d 658 (Pa. Cmwlth. 2016). For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with his work. *See* Section 402(e) of the Law, 43 P.S. § 802(e); *Eshbach v. Unemployment Compensation Board of Review*, 855 A.2d 943 (Pa. Cmwlth. 2004). Willful misconduct has been defined as conduct that represents a wanton or willful disregard of an employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior that the employer can rightfully expect from its employees, or negligence indicating an intentional disregard of the employer's interest or an employee's

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Employer does not challenge any specific findings of fact; therefore, the Board's findings are conclusive on appeal. *See Campbell v. Unemployment Compensation Board of Review*, 694 A.2d 1167 (Pa. Cmwlth. 1997). Further, this court must view the record in a light most favorable to the party which prevailed before the Board, giving that party the benefit of all logical and reasonable inferences deducible from the evidence. *Stringent v. Unemployment Compensation Board of Review*, 703 A.2d 1084 (Pa. Cmwlth. 1997).

duties or obligations. *Eshbach*, 855 A.2d at 947 n. 6. Once an employer establishes a prima facie case of willful misconduct, the burden shifts to the claimant to prove good cause for his actions. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112 (Pa. Cmwlth. 1993).

Where a charge of willful misconduct is based on the violation of a work rule, the employer must prove the existence of the rule and its violation. *Eagle v. Unemployment Compensation Board of Review*, 659 A.2d 60 (Pa. Cmwlth. 1995). The employer also must present evidence that the employee deliberately violated the rule. *Eshbach*; *see also Chester Community Charter School v. Unemployment Compensation Board of Review*, 138 A.3d 50 (Pa. Cmwlth. 2016). An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. *Chester Community*. "Thus, a determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Eshbach*, 855 A.2d at 947-48 (quotation marks and citation omitted). Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. *Id*. at 948. Claimant, as the prevailing party below, is entitled to the benefit of all reasonable inferences drawn from the evidence. *See Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338 (Pa. Cmwlth. 2008).

Claimant was discharged for two reasons. (F.F. No. 26, Referee's decision at 3.) Because either reason for Claimant's discharge would constitute grounds for denying Claimant benefits, each allegation must be addressed

7

separately. *See Anderson v. Unemployment Compensation Board of Review*, 485 A.2d 900 (Pa. Cmwlth. 1985).

With respect to Claimant's discharge in connection with discarding his old body armor, Employer argues that the Board erred in concluding that Claimant's conduct did not rise to the level of willful misconduct. Employer argues that it established the existence of the work rule and that Claimant was aware of the rule. Accordingly, Employer maintains that the Board erred in failing to require Claimant to demonstrate that he had good cause to discard his vest without Employer's authorization. Employer maintains that it appears the Board ignored the Commission's other policies and rules and focused only on the body armor policy, which concerns safety procedures and not procedures for returning equipment.

Claimant was terminated for violating the following work rules and standards of conduct in connection with discarding his body armor:

> 9. Employees will exercise proper care and use of Commission property.
> . . .
>
> 14. Employees shall not act in a negligent or careless manner resulting in the creation of safety hazards, injury or loss or damage to Commission property, including the loss of fish.
>
> 15. Employees shall not misuse, misappropriate or remove Commission property, records, equipment or other materials, including scrap material, from Commission premises without proper authorization.

8

(R.R. at 120a.)

Claimant testified that it was his understanding that he could discard his body armor when it was no longer serviceable.[3]  (R.R. at 108a.)  Claimant considered the body armor to be no longer serviceable, because it was over five years old, was worn, and stank from every day wear.  (R.R. at 110a.)  Although Employer's witness testified that employees were instructed on two occasions to turn in their old body armor, including during a statewide meeting in January of 2016 when the staff was informed that Employer would be issuing new body armor, Claimant disputed this.  (R.R. at 60a, 109a.)  The Board found Claimant credible concerning his reason for throwing away his body armor and that Employer's policies did not require employees to turn in unusable vests.

While we acknowledge that rules need not be written with such precision to include every conceivable scenario, we cannot conclude that Employer's aforementioned rules clearly prohibited Claimant from disposing of his body armor.  Additionally, the Body Armor Policy does not state that employees are required to turn in their body armor.  (*See* R.R. at 192a-93a.)  Claimant had proper possession of the body armor, and Employer did not establish that Claimant knew he had to turn it in.  Given Claimant's credible testimony, Employer failed to establish that Claimant did not exercise proper care, or that he acted in a negligent

---

[3] Claimant testified regarding his equipment inventory list.  (R.R. at 107a.)  Claimant testified that he had to account for the items on the list on a yearly basis no matter what their condition.  (R.R. at 108a.)  Claimant testified that items on the list, such as a Glock firearm, could not be discarded if damaged.  (R.R. at 108a.)  However, Claimant testified that equipment such as his uniform shirt and pants were not on the inventory list, and he did not have to turn them in to Employer when they are unusable.  (R.R. at 108a.)  Claimant testified that his body armor was not on the inventory list.  (R.R. at 108.)

or careless manner, or that he removed property without authorization. Thus, Employer failed to establish that Claimant deliberately violated its policies. Accordingly, we cannot say that the Board erred as a matter of law in concluding that Employer failed to meet its burden to prove that Claimant committed willful misconduct.

Because Employer failed to prove that Claimant committed willful misconduct, the burden never shifted to Claimant to prove good cause for his actions. *See McKeesport*. Accordingly, we must reject Employer's argument that the Board erred by not requiring Claimant to prove good cause for his actions.

We next address Employer's arguments with respect to Claimant's alleged falsification of records and reports. Claimant was discharged for violating Employer's policy stating that "Employees shall not falsify reports and records, including but not limited to personnel, payroll, time and activity and leave." (R.R. at 120a.) Employer argues that the Board erred in finding that Claimant provided competent and credible testimony to refute each of Employer's allegations. Employer points to three reports where Claimant's reported location and time of activity were contradicted by other records such as gasoline receipts and EZ-Pass reports for the Pennsylvania Turnpike. Employer maintains the discrepancies remain unexplained. Employer also maintains that the referee's statement that "Claimant provided pictures and timesheets of his co-workers to show that he was, in fact, performing his job duties on the dates in question" is erroneous because the

photographs do not refute each one of Employer's allegations. Employer also maintains that the record does not contain any time sheets of co-workers.[4]

Additionally, Employer argues that the Board erred by applying an incorrect standard of willful misconduct that required Employer to establish that Claimant's actions were deliberate. Employer contends that the Board ignored case law that would find Claimant's conduct willful when that conduct demonstrates negligence or an intentional disregard for his duty to accurately report his time.[5] Employer maintains that absent "good cause," honest mistakes do not excuse the failure to follow rules.

We cannot agree that the Board ignored case law as to what constitutes willful misconduct. The Board adopted the referee's findings and conclusions, and the "reasoning" accurately sets forth the case law definition for willful misconduct. The Board made a finding that Claimant did not deliberately falsify records, but also found that Claimant credibly explained the alleged discrepancies on his time record, and thus, that Claimant's actions were not willful misconduct.

---

[4] To the extent Claimant did not provide photographic evidence of each challenged report, such was not required. With respect to the referee's statement regarding timesheets of co-workers, we note there was a timesheet admitted, which related to an employee of another Commission, and thus not a co-worker. This errant description is of no moment.

[5] Employer's reliance on *Wilkins v. Unemployment Compensation Board of Review*, 502 A.2d 283 (Pa. Cmwlth. 1985) is misplaced. In *Wilkins*, the employer discharged the claimant for two negligent acts involving safety violations. Additionally, Employer had repeatedly warned the claimant about his unsafe work habits and demoted him three times. That is not this case.

11

Notably, Employer was not questioning that Claimant was not working, but was questioning Claimant's whereabouts and his activities because they did not appear to be accurately reported. (Referee's decision at 3.) Claimant testified that there were no codes for travel time, and Employer confirmed this. (R.R. at 76a, 89a.) Accordingly, Claimant would record his time in other categories such as patrol or administrative. (R.R. at 89a.) Claimant also testified that Employer's tablet issued to him and the software were flawed, and that he often had to rely on his memory to re-create his timesheets due to the information not being saved into the system or the tablet not even starting. (R.R. at 90a.) With respect to the three specific time and activity report dates Employer challenges in its brief, Claimant provided explanations for the discrepancies, all of which were credited by the Board. (Board's decision at 1; *see* R.R. at 95a-97a, 103a-04a.) Additionally, in some instances, Claimant admitted he made mistakes, but the Board found they were honest mistakes and that Claimant did not deliberately falsify his time and activity reports. (F.F. Nos. 14-15, Referee's decision at 3.) What Employer is really asking us to do is to reassess the Board's credibility determinations concerning Claimant's explanation for the alleged discrepancies, and whether, when mistakes were made, they were honest mistakes. However, we must accept the Board's credibility determinations. *See McCarthy v. Unemployment Compensation Board of Review*, 829 A.2d 1266 (Pa. Cmwlth. 2003).

Given the credibility determinations, along with all of the circumstances, particularly the lack of travel codes and sometimes inoperable computer equipment, and giving Claimant the benefit of all reasonable inferences

drawn from the evidence as we are required to do, we cannot say that Claimant's actions were unreasonable or unjustified. Thus, we cannot say that the Board erred as a matter of law in concluding that Claimant's actions did not rise to the level of willful misconduct.[6] Because Employer failed to establish that Claimant committed willful misconduct, Claimant did not need to establish good cause. *See McKeesport*.

Accordingly, for the foregoing reasons, we affirm the Board's decision finding that Claimant is not ineligible for benefits under section 402(e) of the Law.

_____
JULIA K. HEARTHWAY, Judge

Judge Brobson concurs in result only.

---

[6] We cannot conclude, as a matter of law, that Claimant's actions constituted willful misconduct in the form of either a deliberate violation of Employer's rules, a disregard of the standards of behavior that an employer can rightfully expect of its employees or negligence indicating an intentional disregard for the employer's interests or the employee's duties or obligations.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Fish and          :
Boat Commission,               :
               Petitioner          :
                                  :
               v.                  :   No. 1962 C.D. 2016
                                  :
Unemployment Compensation      :
Board of Review,               :
               Respondent          :

## O R D E R

AND NOW, this 31st day of August, 2017, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

_____
JULIA K. HEARTHWAY, Judge