# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gretchen E. Brant,               :
                  Petitioner      :
                                  :
           v.                  :     No. 718 C.D. 2021
                                  :     Submitted:  December 30, 2021
Unemployment Compensation     :
Board of Review,                 :
                  Respondent     :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                FILED:  August 9, 2022

Gretchen E. Brant (Claimant), pro se, petitions for review of the April 28, 2021 Order of the Unemployment Compensation Board of Review (Board) that affirmed a Referee's determination and held that Claimant was ineligible for unemployment compensation (UC) benefits under Section 402(b) of the Unemployment Compensation Law (Law)[2] because she voluntarily quit her job without a necessitous and compelling reason.  We affirm.

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).  Section 402(b) of the Law provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which h[er] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]"  *Id.*

## I. BACKGROUND

Claimant was employed with First Commonwealth Bank (Employer) from September 1992, through August 28, 2020, as a full-time Financial Solution Specialist III. (Supplemental Record (S.R.)[3] at 011-012.) On August 30, 2020, Claimant filed an application for UC benefits, wherein she stated that she voluntarily quit her position with Employer because of "[u]nrealistic and unattainable work expectations/goals, unfair working conditions[,] age discrimination, [and] [o]ffice closing due to [COVID-19]." (*Id.* at 012-013.) Claimant also mentioned that she experienced high stress levels, there was minimal staffing and, oftentimes, no lunch breaks, it was almost impossible to take paid time off, she was sent to different offices to work, all female managers hired in the region over the last several years were young females, and she did not get hired as a salesperson. (*Id.* at 014.) In its questionnaire, Employer informed the UC Service Center that Claimant had resigned. (*Id.* at 019-022.)

In a Notice of Determination issued on December 23, 2020, the UC Service Center determined that Claimant quit work for personal reasons and found Claimant ineligible for benefits under Section 402(b) of the Law, because she had not established a necessitous and compelling reason for leaving her job. (*Id.* at 024.) Claimant appealed the UC Service Center's determination and reiterated her complaints of unrealistic goals and unfair and stressful working conditions. (*Id.* at 028-031.) Claimant also mentioned that her health deteriorated and that Employer "hired many incompetent young blonds [sic] . . . because they were young and pretty

---

[3] The Board has indicated that the Supplemental Record filed on October 22, 2021, is an accurate and complete representation of the paper record in this matter. We therefore cite to the Supplemental Record, which has page numbers, instead of the Certified Record filed on August 16, 2021, which does not.

and could 'sell' . . . ." (*Id.* at 031.) A telephonic hearing was held before a Referee, at which Claimant appeared pro se along with two other witnesses, and Employer appeared with its Senior Human Resources Representative (HR Representative). (*Id.* at 037, 059.)

Claimant testified that her main reasons for quitting were unrealistic work expectations and goals, along with unfair working conditions. (*Id.* at 066.) When asked to elaborate, Claimant explained that, due to the rural nature of the Jerome, Pennsylvania area, Employer's branch only had approximately 800 households that it served, yet Employer's branch had the same goals as larger offices, such as having to persuade 60 customers per week to apply for loans and credit cards. (*Id.*) Claimant testified that achieving these goals was impossible due to the smaller client base of Employer's Jerome branch office and staffing shortages resulting in increased responsibilities for the remaining employees. (*Id.* at 066-069.) The increased responsibilities left Claimant often unable to take a lunch break or use her paid time off. (*Id.* at 068.) Claimant also testified to feeling stressed by receiving emails that reminded her of her goals and feeling like a failure that she was not meeting those goals. (*Id.* at 067.) Additionally, Claimant felt that the pressure was leading other employees to use unethical means of achieving Employer's goals, which she was unwilling to do. (*Id.*)

Claimant was asked when she last met with or discussed her concerns with Employer "prior to [her] separation," to which Claimant explained that, once the resignation was submitted, she then received phone calls from HR Representative's boss (Supervisor) and HR Representative that day. (*Id.* at 070-071.) HR Representative asked why Claimant was quitting, to which she stated, "unrealistic work expectations and the working conditions." (*Id.* at 070.) Claimant explained

3

that she "didn't want to say too much at that time because [she] still had three weeks to work and [she] didn't want [to suffer] any repercussions . . . and [to have Employer] come back and say oh, well you should just leave now." (*Id*. at 071.) HR Representative told Claimant "if you don't express what is happening, nothing will ever change. You have to speak up if you want change." (*Id*.)

HR Representative testified next on behalf of Employer that after she received Claimant's resignation letter on August 7, 2020, she spoke to Claimant about why she was resigning. (*Id.*) HR Representative further testified that Claimant was "a very long-term employee" and had exemplary performance reviews, and that Claimant did in fact inform HR Representative of the unrealistic job expectations and her other concerns about progressing in her role at Employer. (*Id.*) HR Representative also indicated that Claimant was offered the exact same position with Employer at the Jennerstown branch office, which is within a 25-mile radius of the Jerome office, because the Jerome branch would be consolidating, yet Claimant still chose to resign. (*Id.*) HR Representative testified that Employer's goals were not within her control and that every branch felt the goals were unrealistic. (*Id.* at 072.) Finally, HR Representative testified that Claimant was a very good employee and was receiving her annual pay increases despite Claimant's claim of it being difficult, if not impossible, to meet her goals. (*Id.*)

Claimant asked a former colleague (Colleague) to testify as a witness on her behalf. (S.R. at 073.) Colleague testified to the same infeasible goals, discouraging emails, and frustrations previously discussed by Claimant, and stated that she left Employer for the same reasons as Claimant. (*Id.* at 073-074.) After Colleague concluded her testimony,[4] Claimant offered a closing statement, in which she alluded

---

[4] The Referee did not permit Claimant's second witness to testify, as the testimony would have been cumulative of both Claimant's and Colleague's testimony. (S.R. at 074.)

to her health deteriorating from anxiety and the crying she experienced due to the pressure she felt from her working conditions. (*Id.* at 075.)

Following the hearing, the Referee issued a decision on February 5, 2021, finding that Claimant did not have a necessitous and compelling reason for voluntarily quitting her employment. (S.R. at 077-081.) In doing so, the Referee made the following findings of fact:

1. [] [C]laimant was employed by [Employer] as a Financial Solution Specialist III at $21.75 an hour full time from September 11, 1992, through August 28, 2020.

2. [] [C]laimant voluntarily left her employment due to dissatisfaction with working conditions involving unrealistic work expectation goals and unfair working conditions.

3. . . . HR [R]epresentative received [] [C]laimant's resignation letter dated August 7, 2020, effective August 28, 2020.

4. Upon receipt of [C]laimant's resignation letter and in light of her 28 years of service, . . . HR [R]epresentative reached out to the [C]laimant to inquire [about] the reasoning behind her resignation.

5. Due to the rural nature of their branch in Jerome, Pennsylvania, the [E]mployer's branch had approximately 800 households to which [it] served.

6. Claimant was discontent with receiving the same goals as some larger offices that had more households to offer [its] various financial products.

7. Claimant was discontent with the Jerome branch due to the manager and [] [C]laimant being the [only] full-time workers and only obtaining additional help on a sporadic basis.

8. Claimant determined it was impossible to serve [] customers at the drive-thru as well as attempt to solicit [] customers for additional lines of credit, such as a home equity loan.

5

9. Prior to [][C]laimant's separation, [] [C]laimant[,] as well as the [E]mployer's branch manager in Jerome[,] understood their location was consolidating with another branch.

10. Prior to [] [C]laimant's separation, [] [C]laimant was informed of [Employer's] intent to place her in the same position at [its] Jennerstown branch.

11. During her call to . . . HR [R]epresentative, [C]laimant did express [that] she thought the expectations were unrealistic and was aware of the expected consolidation.

12. During [C]laimant's employment, the [C]laimant's performance reviews were exemplary and she received the annual increases, despite not reaching the goals and expectations for soliciting more households for additional financial products which the [E]mployer offered.

(Referee's Decision, Findings of Fact (FOF) ¶¶ 1-12.)  The Referee found Claimant's testimony regarding Employer's unrealistic work expectations and quotas to be competent and credible.  (Referee's Decision at 2-3.)  The Referee also noted the following:

> The [C]laimant thought it was unfair that she would have to ped[dle] the [E]mployer's financial products to the[] limited households that used the[] branch because the Jerome location was a rural branch and had less households utilizing the[] branch.  Additionally, [] [C]laimant had to serve the customers that came into the branch, whether it was at the drive-thru or when the[] lobby was open, to serve those customers, in lieu of, attempting to encourage the households to complete various applications for credit lines and/or home equity lines of credit to meet the goals set by someone above the branch manager.

(Referee's Decision at 3.)  However, the Referee determined that Claimant's "inability to meet the expectation and goals set by someone above the branch manager is not cause of [a] necessitous and compelling [nature] to leave one's employment[,] as" Claimant was never penalized for not meeting those goals, "her

6

service ratings were exemplary[,]" and Employer never withheld annual pay increases for Claimant not meeting Employer's goals. (*Id.*) The Referee also opined that had Claimant continued her employment with Employer at the Jerome branch and then transferred to the Jennerstown branch at the time of their consolidation, Employer's goals and expectations would have been more achievable with "more households attached to [the Jennerstown] branch." (*Id.*) For these reasons, the Referee concluded Claimant was ineligible for benefits under Section 402(b) of the Law. (*Id.*)

Claimant appealed to the Board, stating that "I do not agree with the decision or the reasons/assumptions!" (S.R. at 086.) By Order issued on April 28, 2021, the Board concluded that the Referee's decision was proper under the Law. The Board also noted the following:

> The Board finds no credible evidence that [] [C]laimant had a medical condition or that [] [C]laimant was subjected to discrimination based upon her age. Although the [E]mployer required [] [C]laimant to engage in sales activities which she found disagreeable, the Board does not find credible evidence that [] [C]laimant was required to engage in sales activities that were unethical or illegal. Moreover, [] [C]laimant was never penalized for missing sales goals.

(Board's Order, S.R. at 088.) The Board therefore adopted and incorporated the Referee's findings of fact and conclusions of law as its own and affirmed the Referee's decision. Claimant now petitions this Court for review of the Board's Order.[5]

---

[5] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

7

## II. PARTIES' ARGUMENTS

On appeal, Claimant essentially argues that the Board's findings of fact concerning her resignation from Employer are not supported by substantial evidence. In her brief, Claimant specifically challenges findings of fact 1, 6, 7, 8, and 12. (Claimant's Brief (Br.) at 7, 10-15.) In her challenge to finding of fact 1, Claimant asserts that she is a "stellar, hard[-]working and dedicated employee" and argues that she made more than reasonable efforts to preserve her nearly 28-year employment with Employer. (*Id.* at 10.) Regarding finding of fact 6, Claimant asserts that the Board's characterization of her as "'[d]iscontent' sounds as if she was lazy and did[ not] want to work when her reasoning was the unrealistic and unattainable work expectations for the size of her" branch compared to that of other branches. (*Id.* at 11.) Claimant explains, with respect to findings of fact 7 and 8, that she experienced poor working conditions, not mere discontent, which caused her overwhelming anxiety and depression. (*Id.* at 11-12.) Further, Claimant highlights that there were days when it was just her and the branch manager, and that she would be unable to take a lunch, bathroom, or mental health break. (*Id.* at 11.) Next, according to Claimant, finding of fact 12 implies that Employer "was doing [C]laimant a favor by giving her annual increases and exemplary reviews." (*Id.* at 13.) Claimant additionally challenges the Board's finding that had she transferred branches, Employer's goals/expectations would be more achievable, asserting that such finding is "pure speculation and the Referee's opinion" as there is no evidence showing that would be the case. (*Id.* at 13-14.) Claimant also appears to assert that she was never asked about her medical condition; thus, it should not have been considered by the Board in this case. (*Id.* at 14.) Claimant further challenges the Board's finding regarding unethical or illegal sales activities, citing

8

various dictionary definitions of the words "unethical" and "illegal" in her brief and arguing that the Board cannot tell another what is "unethical" for that individual. (*Id.* at 14-15.) In her petition for review, Claimant also argues that she was never asked about how she was subjected to age discrimination. (Ancillary Petition for Review (Pet. for Rev.) ¶¶ 6-7.)

The Board responds that Claimant does not specifically challenge the evidentiary basis for any of the Referee's 12 findings of fact adopted by the Board, or the additional findings contained in the Board's Order, and, therefore, those findings, which are supported by substantial evidence, are conclusive on appeal. (Board's Br. at 6-10.) According to the Board, Claimant's arguments pertain to the sufficiency of the Board's findings, as well as the adequacy of the Board's phrasing of some of its findings, neither of which is relevant to the issue considered by the Board or the issue now before this Court on appeal. (*Id.* at 7-10.) The Board points out that the issue before this Court is whether the Board erred in concluding that Claimant did not have a necessitous and compelling reason for quitting her job with Employer under Section 402(b) of the Law. (*Id.* at 11.) In that regard, the Board argues that it properly concluded that Claimant did not credibly demonstrate either that her working conditions were intolerable or that she made reasonable efforts to preserve her employment before resigning. (*Id.* at 10-19.)

### III.   DISCUSSION

*A. Challenges to the Findings*

Claimant challenges findings 1, 6, 7, 8, 12, and the Board's findings that Claimant did not have a medical condition or was subject to age discrimination. It is well settled that the Board is the ultimate factfinder and is entitled to make its own

9

determinations as to witness credibility and evidentiary weight, as well as to resolve conflicts in the evidence. *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388-89 (Pa. 1985); *DeRiggi v. Unemployment Comp. Bd. of Rev.*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). When the Board's findings are supported by substantial evidence, which has been "defined as relevant evidence upon which a reasonable mind could base a conclusion," they are conclusive on appeal. *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013) (citing *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986)).

It is evident that Claimant takes issue with the Board's findings of fact 1, 6, 7, 8, and 12 based on the Board's purported failure to consider Claimant's specific accomplishments achieved throughout her employment with Employer (FOF ¶ 1), its characterization of Claimant as being "discontent" over Employer's expectations (FOF ¶¶ 6-7), the Board's alleged failure to consider the busy working conditions Claimant experienced at the Jerome branch (FOF ¶¶ 7-8), and the Board's purported implication that Employer was doing Claimant a favor by giving her annual raises and excellent reviews (FOF ¶ 12). (Claimant's Br. at 10-14.) Despite Claimant's apparent arguments to the contrary, the Board did not ignore or mischaracterize the proffered evidence in making the above findings, but rather, it made credibility and evidentiary weight determinations as to the evidence presented. Although the Board specifically credited Claimant's testimony about Employer's unrealistic expectations and goals and unfair working conditions, (*see* Board's Order), it accorded little to no weight to her testimony, finding that Claimant was merely dissatisfied with work and did not suffer any repercussions, in terms of pay increases or performance reviews, based on her inability to meet Employer's goals. Claimant

10

is essentially asking this Court to overturn the Board's credibility and evidentiary weight determinations, which we cannot do based on the record before us.

Claimant also contends that the Board should not have considered her medical condition in its decision because she was never asked about it at the Referee hearing; thus, it should not be used against her in the Board's decision denying her benefits. (Claimant's Br. at 14.) We agree with Claimant. We recognize that a health condition may constitute a compelling reason for a claimant to resign her employment,[6] and that, here, the Board found no credible evidence that Claimant had any medical condition. We note, however, that Claimant has not asserted, at any point in these proceedings, that she had a necessitous and compelling cause to resign her employment based solely on a medical condition. Pointedly, Claimant did not raise any issue as to her medical condition at the hearing before the Referee when asked about her reasons for resigning her employment, other than implying that she experienced stressful working conditions at Employer. (S.R. at 066-070.) She also did not raise the issue when asked by the Referee if she had anything further to add to her testimony; rather, Claimant mentioned only in passing her deteriorating health due to anxiety and crying in her closing statement. (*Id.* at 075.) That the Board appears to have erroneously addressed whether Claimant had a medical condition that constituted compelling cause to resign, however, does not mean that its decision to deny benefits was unsupported. As explained below, the Board made

---

[6] To establish that a medical condition constituted a compelling reason to resign, a claimant must prove through competent and credible evidence that (1) the health reason is of sufficient dimension to compel the employee to quit; (2) the employee informed the employer of the health problem; and (3) the employee is able and available for work if the employer can make a reasonable accommodation. *Watkins v. Unemployment Comp. Bd. of Rev.*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013).

additional findings that are supported by substantial evidence, which are sufficient to support its decision to deny Claimant benefits.

Finally, Claimant asserts that "[t]he [Board] stated that there was no credible evidence that I was subjected to discrimination based on my age. I was never asked why I felt this way or what was transpiring within the bank for me to make these claims." (Pet. for Rev. at 2.) The Board observes that it specifically found that there was no credible evidence showing that Claimant experienced such discrimination. Claimant does not provide any argument in her brief on this issue and a review of the record shows that Claimant did not present any evidence or argument on this topic before the Referee. Although Claimant complains that she was not asked about this issue, she bore the burden of proof in this matter. *Latzy v. Unemployment Comp. Bd. of Rev.*, 487 A.2d 121, 123 (Pa. Cmwlth. 1985). Thus, we cannot say the Board erred in concluding that there was no credible evidence showing that Claimant was subjected to age discrimination.

### B. Necessary and Compelling Reasons Under Section 402(b)

Claimant's overarching argument on appeal is that the Board erred in concluding that she failed to establish cause of a necessitous and compelling nature to quit her job. Throughout, Claimant has consistently adhered to her claims of unrealistic work expectations/goals, unfair working conditions, and unethical sales activities at Employer as her reasons for resigning her employment.

Section 402(b) of the Law provides that an employee is ineligible for UC benefits when her "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). Here, it is undisputed that Claimant voluntarily left her employment. Thus, the burden is on Claimant to

12

show that she had a necessitous and compelling reason to do so. *Latzy*, 487 A.2d at 123. To satisfy this burden, Claimant must demonstrate that "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve [her] employment." *Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). The question of whether a claimant had necessitous and compelling reasons for terminating employment is a legal conclusion that must be drawn from the underlying findings of fact, and it is, therefore, subject to appellate review. *Truitt v. Unemployment Comp. Bd. of Rev.*, 589 A.2d 208, 210 (Pa. 1991); *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977).

We have held that, absent an intolerable work atmosphere, "[m]ere dissatisfaction with one's working conditions[, hours, workload, or wages] does not constitute cause of a necessitous and compelling nature for terminating one's employment." *Brunswick Hotel*, 906 A.2d at 660; *Lynn v. Unemployment Comp. Bd. of Rev.*, 427 A.2d 736, 737 (Pa. Cmwlth. 1981); *Hostovich v. Unemployment Comp. Bd. of Rev.*, 414 A.2d 733, 735 (Pa. Cmwlth. 1980). "[M]ultiple causes, none compelling or necessitous, do not in combination become one qualifying cause." *Hostovich*, 414 A.2d at 735. On the other hand, intolerable working conditions or an employee's reasonable belief that her professional integrity is jeopardized by the circumstances of her work may constitute necessitous and compelling cause to terminate employment. *First Fed. Savings Bank v. Unemployment Comp. Bd. of Rev.*, 957 A.2d 811 (Pa. Cmwlth. 2008); *Fitzgerald v. Unemployment Comp. Bd. of Rev.*, 714 A.2d 1126, 1130 (Pa. Cmwlth. 1998).

We note, however, that this Court has previously recognized the necessity of distinguishing "those employees who merely find their work distasteful or who dislike their duties from employees whose work required them to do something wrong." *Ayres v. Unemployment Comp. Bd. of Rev.*, 598 A.2d 1083, 1087 (Pa. Cmwlth. 1991). The law is clear that the Board's findings of fact are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. *Henderson*, 77 A.3d at 718. A claimant's belief that a different version of the events took place does not create grounds for reversal if the Board's findings are supported by substantial evidence. *Tapco, Inc. v. Unemployment Comp. Bd. of Rev.*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Moreover, a witness's testimony may provide substantial evidence to support a factual finding. *See Holt v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1071, 1072-73 (Pa. Cmwlth. 2004) (citing witnesses' testimony as substantial evidence for a finding of the Board).

Here, the Board found that Claimant resigned her nearly 28-year employment for personal and subjective reasons related to Claimant's "dissatisfaction with working conditions involving unrealistic work expectation goals and unfair working conditions." (FOF ¶ 2.) A review of the record reveals that there is substantial evidence to support the Board's findings of fact. The Board determined that Claimant's testimony that she resigned due to unrealistic work expectations/goals and unfair working conditions was credible. (*Id.*) The Board, however, rejected Claimant's testimony to the extent she claimed that her receiving the same goals as larger branches, Employer's staffing shortages, her increased workload, and her inability to meet Employer's expectations/goals constituted necessitous and compelling reasons to quit, reasoning that Claimant merely expressed her discontent

14

with these things and was never penalized for missing sales goals. (FOF ¶¶ 6-8, 12; Board's Order.) On this point, the Board credited Employer's witness, HR Representative's testimony that Claimant received exemplary performance reviews and annual pay increases, despite her allegations of not being able to reach the goals and expectations set by Employer. (S.R. at 072; FOF ¶ 12; Referee's Decision at 3; Board's Order.) As such, the Board concluded that Claimant failed to meet her burden.

Claimant also argues that she had a necessitous and compelling reason to quit because Employer required her to engage in sales activities that were contrary to her morals and ethics. This Court has previously held that where there is no express violation of law, regulation, or professional ethics, an employee does not establish cause of a compelling or necessitous nature unless the employee proves that the duties required by the employer so affected her professional and personal integrity that it would justify the voluntary quit. *Ayres*, 598 A.2d at 1087. The practice of the employer must be highly questionable so that avoidance of the practice would be the prudent course of action. *Id.*

While the Board found that Employer required Claimant to engage in sales activities that Claimant found disagreeable, the Board did not find any other credible evidence showing that such activities were unethical or illegal. (Board's Order.) Our review of the record also reveals none. Claimant's difficulty here is that her testimony before the Referee was of a general nature, although she did testify that "[i]t was not about what was right for the customer. It was what was right for [Employer], and that is against my morals, my values and my ethics. I am not going to try and sell a product to someone that does not need it just to get a tick mark. That's just -- that's not right. You don't -- you just don't do that." (S.R. at 067.)

15

She further testified that she was "made to do what was best for the bank and I would not be dishonest to my customers. I just wo[uld]n't do it." (S.R. at 068.) However, a reasonable inference from this testimony is that Claimant was concerned about selling financial products to customers who did not need them, which she personally would not do, not that there were ethical issues with Employer's business practices. (Board's Order.) To the extent Claimant may have believed Employer was acting unethically, (*see* S.R. at 066-069), such subjective beliefs are not sufficient to establish necessitous and compelling cause for resigning her employment. *See Tom Tobin Wholesale v. Unemployment Comp. Bd. of Rev.*, 600 A.2d 680, 682, 684 n.3 (Pa. Cmwlth. 1992) (finding the claimant had a necessitous and compelling reason to voluntarily terminate his employment based on the finding that the claimant "was required to alter a computer program for illegal purposes," and the conclusion that the claimant had a reasonable belief, rather than just a subjective belief, that he was performing an illegal act that would negatively affect his professional integrity). While Claimant is to be commended for following her conscience and always doing what she thought was best for her clients, "we cannot hold mere subjective beliefs to constitute cause of a necessitous and compelling nature. To do otherwise would place employers at the mercy of the unsubstantiated personal beliefs of their employees." *Ayers*, 598 A.2d at 1087. Ultimately the Board's legal conclusion, that Claimant lacked necessitous and compelling reasons to voluntarily quit, was supported by the record and is consistent with our precedent, and, therefore, we will not disturb the Board's determination in this regard. *Taylor*, 378 A.2d at 831. *See also Truitt*, 589 A.2d at 210.

Moreover, even if Claimant had shown that her work conditions were intolerable for these reasons, the Board concluded that Claimant failed to make

16

reasonable efforts to preserve the employment relationship and, therefore, did not act with ordinary common sense in quitting. (Referee's Decision at 2-3.) Claimant's testimony shows only limited communications between Claimant, HR Representative, and Supervisor **after** submitting her resignation. Had Claimant made reasonable efforts to raise these concerns with Employer, and had those efforts been unsuccessful, a different analysis may have been warranted. The record reveals no such reasonable efforts to communicate these concerns occurred prior to Claimant's resignation. Additionally, HR Representative testified that Claimant was offered the same position and compensation at the Jennerstown branch, which was within a 25-mile radius of the Jerome location, yet Claimant still chose to resign. (S.R. at 071.) Claimant did not attempt to work at the Jennerstown branch or communicate to Employer any concern she may have had that the transfer would not help her meet its goals. Thus, the Board's determination that Claimant did not make reasonable efforts to preserve her employment is supported by substantial evidence.

## IV. CONCLUSION

Taking all logical and reasonable inferences and viewing them in the light most favorable to the prevailing party, *Stringent v. Unemployment Compensation Board of Review*, 703 A.2d 1084, 1087 (Pa. Cmwlth. 1997), we must conclude that the testimony supports the Board's findings that Claimant's dissatisfaction with Employer's unrealistic work expectations/goals and unfair working conditions, and her increased work responsibilities and general discontent resulting therefrom, did not constitute necessitous and compelling cause to quit her employment. (Board's Order, FOF ¶¶ 2, 6-8, 12); *see also Brunswick Hotel*, 906 A.2d at 660; *Lynn*, 427 A.2d at 737; *Hostovich*, 414 A.2d at 735.

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gretchen E. Brant,            :
            Petitioner     :
                    :
          v.         :   No. 718 C.D. 2021
                    :
Unemployment Compensation  :
Board of Review,         :
            Respondent  :

# **O R D E R**

**NOW**, August 9, 2022, the April 28, 2021 Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED**.

 

                                  _____

                                  **RENÉE COHN JUBELIRER,** Judge